FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA JUN 24 PM 1:55
NORTHEASTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| RAMONA COSBY, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: CV-02-P-2029-NE |
| DIAKIN AMERICA, INC., a corporation, | ) **ENTERED** |
| Defendant. | ) JUN 2 4 2004 |

**MEMORANDUM OPINION**

The court has before it Defendant's Motion for Summary Judgment, (Doc. # 35), filed May 30, 2003, and Defendant's Motion to Strike Plaintiff's Evidentiary Submission, (Doc. # 62), filed December 10, 2003. Pursuant to the court's June 6, 2003 order, (Doc. # 36), the motion for summary judgment was deemed submitted, without oral argument, on July 7, 2003. The undersigned received this case by reassignment on October 1, 2003. (Doc. # 55). For the reasons outlined below, there are no disputed issues of material fact and Defendant has demonstrated it is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is due to be granted and its Motion to Strike denied.

I. **Procedural History**

Plaintiff Ramona Cosby ("Ms. Cosby") commenced this action on August 20, 2002 by filing a complaint in this court. (Doc. #1). Ms. Cosby amended her complaint on October 9, 2002, alleging that Diakin America, Inc. ("Diakin") discriminated against her on the basis of her race (African-American), gender (female), and pregnancy. (Doc. # 6). Plaintiff contends that Defendant's alleged conduct constitutes a violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42



U.S.C. 2000e *et seq.*[1] (*Id.*). Defendant's motion for summary judgment asserts that no genuine issue of material fact exists and that Defendant is entitled to judgment as a matter of law. (Doc. # 40).

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the pending motion for summary judgment. Defendant filed a memorandum of law in support of its motion, (Doc. # 40), and evidentiary submission (Doc. # 37). Plaintiff submitted an opposition brief, (Doc. # 43), and evidentiary submission (Doc. # 42). Defendant subsequently filed a reply brief, (Doc. # 46), and a motion to strike plaintiff's evidentiary submission (Doc. # 62).

II.     **Legal Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[1] In her amended complaint, (Doc. # 6), Ms. Cosby also alleged a claim for invasion of privacy, but has requested that this court dismiss that claim without prejudice according to Fed.R.Civ.P. 41(a)(2). (Doc. # 43). Accordingly, the court dismisses Plaintiff's invasion of privacy claim. Additionally, in her complaint Plaintiff asserted that she was discriminated against in the terms and conditions of employment and was subjected to a hostile work environment. (Doc. # 6). The court assumes that Plaintiff has withdrawn these claims, to the extent that such claims were made, because no argument has been presented in their support. (Doc. # 43). *See, e.g., Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.*, 998 F. Supp. 1473, 1477 (N.D.Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned). Plaintiff does not respond to this argument and thus is deemed to have abandoned this claim. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D.Ga. 2001). *Cf. McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."). Furthermore, the record does not support those claims.

as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

The method used by the party moving for summary judgment to discharge her initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet her burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

### III. Relevant Undisputed Facts[2]

The undisputed facts are as follows. Diakin is a manufacturer of "fluorochemical products" including gas products, liquid products and plastic powders. (Doc. # 40, at 2). On July 8, 1996, Ms. Cosby was hired to work at Diakin's Decatur, Alabama facility. (*Id.*, at 3; Doc. # 43, at 23). As with most new-hires, Ms. Cosby began her employment at Diakin in F-1 Finishing, (Doc. # 42, PEX. A, Keith depo., at 120), a production area where liquid polymer is turned into powder by a process that requires employees to monitor chemical mixtures (including solutions of nitric acid), spread coagulated polymer, and dry and package the manufactured powder. (Doc. # 40, at 2-3). While working as a F-1 Finishing operator, Ms. Cosby recieved several raises and favorable merit reviews. (Doc. # 43, at 23-24).

In December 1999, Ms. Cosby was promoted, with a pay increase, to an operator position in N-1 Polymer production. (*Id.*). In the N-1 Polymer production area, Tetrafluoroethylene, a volatile, unstable gas is mixed with other chemicals and pressurized to make a polymer powder. (Doc. # 40, at 2-3). Ms. Cosby continued as a N-1 Polymer operator until April 16, 2000 when she was issued a letter of reprimand, suspended for a day, recieved a decrease in pay, and was demoted, returning to F-1 Finishing as an operator. (*Id.*, at 4; Doc. # 43, at 23). The letter of reprimand explained that disciplinary action was taken because Plaintiff disappeared from the process area during production and was found lying on a bench in the women's locker room. (Doc. # 42, PEX. R, (Letter of Reprimand)). Aside from the letter of reprimand, Plaintiff had an excellent work record with one exception. Once, a co-employee suffered slight acid burns to her head because Ms. Cosby failed to clean two containers used to hold

---

[2] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

nitric acid. (Doc. # 37, DEX. 4, Cosby depo., at 110).

On January 14, 2001, Plaintiff was promoted to Team Leader in F-1 Finishing, (Doc. # 43, at 25), assuming the role previously filled by Dana Marchand, a White female.[3] Plaintiff's responsibilities as Team Leader included communicating the details of her shift's production rate and any problems experienced to the Area and Floor supervisors. (Doc. # 37, DEX. 4, Cosby depo., at 53-59). Following this promotion to Team Leader, Plaintiff recieved another pay increase. (Doc. # 43, at 25). At the time of her promotion, Plaintiff was one of four Team Leaders in F-1 Finishing, along with Audrey Smiley, a Black female, Portia Wynn[4], a Black female, and Lynn Holmes, a White Female. (*Id.,* 29).

Plaintiff avers that, following her promotion to Team Leader, she experienced problems of hostility from some of her team members, (*id.*), and that she reported these to her immediate supervisor, Jason Carter. (*Id.*, at 38). Although Defendant claims that Charles Oden, one of the employees who was allegedly hostile toward her, was terminated in response to Plaintiff's complaints concerning his conduct, (Doc. # 40, at 7), Plaintiff asserts that Mr. Oden left Diakin voluntarily, (Doc. # 43, at 30), and that "Mr. Carter took no action that she [Plaintiff] saw" pursuant to her complaints. (*Id.*).

In September 2001, Mr. Keith, Mr. Hendrixson, and Mr. Carter interviewed a number of the employees working in F-1 Finishing. (Doc. # 43, at 35-40). Defendant claims that these interviews were conducted in response to employee complaints of Plaintiff's conduct and to determine the source of the

---

[3]Ms. Marchand was terminated after calling another employee a "Black, Nigger bitch." (*Id.*, at 78).

[4]Although Plaintiff's brief addressed, at length, Ms. Wynn's qualifications, work record, and termination, which also occurred after the September 2001 interviews, this evidence is significant only to the extent that it was used in an attempt to support Plaintiff's argument that the September 2001 interviews were used to target African-American or female employees (Plaintiff makes no claim that Ms. Wynn was pregnant).

morale problems in the F-1 Finishing production area. (Doc. # 42, PEX. A, at 18, 115). The record indicates that each of the twenty-one employees interviewed were asked the same open ended questions, including: whether any Team Leaders "were failing to get along;" whether "anyone in the department [is] sleeping on the job;" and whether "anyone [is] cursing or using loud language?" (Doc. # 43, at 40). Plaintiff was among the employees interviewed. (*Id.*). During the interviews, Mr. Keith took notes of the employee responses. (*Id.*, at 115-17; Doc. # 42, PEX. E). During these interviews, many employees accused Plaintiff of using abusive language and intimidation tactics, falling asleep while on the job, and using her cellular phone in the production area. (*Id.*). Following these interviews, on September 25, 2001, Diakin terminated Plaintiff's employment. Diakin's position is that her discharge was because of these alleged violations of company policy. (Doc. # 43, at 43). Ginger Letson, a White, nonpregnant female was promoted to fill Plaintiff's position as F-1 Finishing Team Leader. (*Id.*, at 44).

**IV.    Applicable Substantive Law and Discussion**

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742, 2747-48 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocations of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 123 S.Ct. 2148 (2003), that model applies only in cases where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas /Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden of production, the plaintiff must either present substantial evidence which shows (1) that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* (2) a reasonable jury could conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253-54; *Desert Palace*, 123 S.Ct. at 2154-55.

### A. Plaintiff's Prima *Facie Case*

In order to establish a *prima facie* case of disparate treatment in termination based on race, gender or pregnancy, Plaintiff must show: (1) she is a member of a protected class; (2) she suffered an adverse job action; (3) her employer treated similarly-situated employees outside her classification more favorably; and (4) she was qualified to do the job. *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted); and *Coutu v. Martin Cty. Bd. of Cty. Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995).

The Plaintiff has put forth evidence sufficient to establish a *prima facie* case of discrimination. It is not contested that Plaintiff, as an African-American, pregnant female, is in a protected class, that termination is considered an adverse job action, or that Ginger Letson, a White, nonpregnant female, replaced Plaintiff as Team Leader when Plaintiff's employment was terminated. Plaintiff has presented sufficient evidence to establish her qualification for employment with Diakin, and Defendant presented no evidence that would bring into question Ms. Cosby's qualification. The Eleventh Circuit has

explained that an inference of qualification for employment is warranted "where a plaintiff has held a position for a significant period of time." *Young v. General Foods Corp.*, 840 F.2d 825, 830 n.3 (11th Cir. 1988); *Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354, 1360 (11th Cir. 1999). Ms. Cosby's qualifications can be inferred from her five year employment with Diakin. Furthermore, Ms. Cosby recieved a promotion to the team leader position and numerous pay increases and favorable evaluations over the course of her employment with Diakin. Thus, the Plaintiff has presented sufficient evidence to establish a presumption of illegal discrimination under the *McDonnell* and *Burdine* framework.

### B.  Defendant's Articulated Reasons

With the fulfillment of the Plaintiff's burden to establish the *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *McDonnell*, 411 U.S. at 803.  A reason offered may be either objective or subjective if it is premised upon facts that are particular (i.e. clear and reasonably specific). *Chapman*, 229 F.3d at 1034-35; *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1280 (11th Cir. 2000). Neither the court nor the Plaintiff should presume to judge whether an employment decision is fair or wise, but only whether it is legal. *Chapman*, 299 F.3d at 1030, n.19; *see also Pennington v. City of Huntsville*, 251 F.2d 1262 (11th Cir. 2001).

Defendant's articulated reason for terminating Plaintiff is that she violated company policy.[5]

---

[5] Plaintiff argues that Defendant articulated "inconsistent" reasons for her termination. (Doc. # 43, at 76). As evidence, she notes that the Production Manager, Mr. Hendrixson, told Plaintiff that she was terminated for "poor work performance," (Doc. # 42, PEX. J, Cosby aff., at 15), while the Human Resources Manager, Mr. Keith, told Plaintiff that she was terminated for "violation of company policy." (Doc. # 43, at 76; Doc. # 42, PEX. J, Cosby aff., at 9). Hendrixson and Keith were both present during many of the September 2001 interviews, including Plaintiff's interview. (Doc. # 42, PEX. J, Cosby aff., at 8; PEX. A, Keith depo., at 82). Plaintiff offers this evidence as proof of inconsistent reasoning for Defendant's employment decision. The alleged inconsistency is an argument of semantics. Plaintiff concedes that the alleged "violation of company policy" consists

9

(Doc. # 40, at 9; Doc. # 37, Keith Aff. EX. B (Employee Status form)). Specifically, Defendant believed employee complaints against Plaintiff alleging: (1) "that she abused her co-employees" by using "abusive language," showing favoritism, and threatening her co-employees, (Doc. # 40, at 7-8; Doc. #37, DEX. 2, Keith depo., at 17; Doc. # 42, PEX. E, (Employee Interviews)); (2) that she "slept on the job," (Doc. # 40, at 8; Doc. # 37, DEX. 2, Keith depo., at 69-72; Doc. # 42, PEX. E, (Employee Interviews)); (3) and that she used her cellular phone in violation of safety rules. (Doc. # 40, at 8; Doc. # 37, DEX. 2, Keith depo., at 72-73; Doc. # 42, PEX. E, (Employee Interviews)). The court finds that Defendant has met its "exceedingly light" burden to articulate a nondiscriminatory reason for the adverse action. *Walker v. NationsBank*, 53 F.3d 1548, 1556 (11th Cir. 1995).

### C. Plaintiff's Evidence of Pretext

Under the *McDonnell/Burdine* test, once the defendant proffers a legitimate, non-discriminatory reason for the challenged employment decision, "[the plaintiff] must have the opportunity to demonstrate that the proferred reason was not the true reason for the unemployment decision." *Burdine*, 450 U.S. at 256. Here, Defendant has articulated three reasons for Plaintiff's termination: Plaintiff's mistreatment of her subordinate employees; her falling asleep while on duty; and her use of a cell phone in the production area.

There must be "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proferred reasons for its challenged action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997). In other words, where a defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proferred

---

of the conduct she was accused of, namely that she (1) abused co-employees, (2) slept on the job, and (3) used a cellular phone in violation of safety rules. (Doc. # 43, at 62, n.7). These alleged violations, if true, would qualify as "poor work performance" under any definition.

reasons. *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000). Plaintiff has failed to show Defendant's articulated reasons for termination are pretextual. Further, when drawing all inferences in favor of the Plaintiff, the evidence is such that no reasonable jury could conclude that discrimination was the true reason, or a "motivating factor," for the Defendant's employment decision.

The Plaintiff offers several arguments in an effort to support a showing of pretext. Plaintiff first argues that Defendant departed from the general procedure for addressing the employee complaints, if any were actually made, against her. (Doc. # 43, at 67-69, 71-73). In deposition, Mr. Keith testified that there are two different policies used in addressing employee complaints, (Doc. # 42, PEX. A, Keith depo., at 62-68; PEX D, at 6, 22 (Employee Handbook)), one for "work-related complaints" another for complaints of harassment. Defendant's harassment policy states that "[a]ny employee who believes that he or she has been harassed in violation of this policy may submit a confidential written complaint to the Human Resources Manager [Mr. Keith]." (Doc. # 42, PEX. D, at 6 (Employee Handbook)). Plaintiff contends that Defendant's failure to produce any *written complaints* made by an employee prior to the investigations is a departure from company procedure and evidence of pretext; specifically that the complaints were either fabrications or of no significance, and that she was "targeted" by interviews. (Doc. # 43, at 71-73). However, the violations of company policy of which Plaintiff is accused are not found under the harassment policy, but under the "Rules of Conduct." (Doc. # 43, PEX. D, at 22-31 (Employee Handbook)).

The "Complaint Procedure" found in the Diakin Employee Handbook states that employees who have a "complaint or work-related problem" are encouraged to discuss the problem with their immediate supervisor. (*Id.*). Plaintiff argues that, under company policy, the complaints made against her should have been made in writing. Mr. Keith testified that although the "Complaints Procedure" does not

11

mention whether complaints of "work-related problem[s]" should be memorialized, supervisors "generally . . . write down what they're told when it's an employee concern." (Doc. # 43, PEX. A, Keith depo., at 66). Even assuming that Defendant's practice of "generally" writing down employee complaints would produce written complaints in the majority of incidents, Plaintiff's argument does not lead to an inference of pretext.

In contending that these facts are evidence of pretext, Plaintiff overlooks occassions when unwritten complaints were offered against employees who are not in the protected class. For example, following her promotion to F1-Finishing Team Leader in January, 2001, (Doc. # 42, PEX. J, Cosby aff., at 3), Plaintiff complained to Jason Carter, her immediate supervisor, that Charles Oden, a White male, was uncooperative. (Doc. # 43, at 7; Doc. # 42, PEX. J, Cosby aff., at 6; Doc. # 37, DEX. 4, Cosby depo., at 79-80). Although there is a dispute concerning whether Mr. Oden's subsequent departure from Diakin was voluntary or due to termination resulting from her complaint, Plaintiff concedes that "she did not submit a written complaint." (Doc. # 43, at 7). Prior to Plaintiff's promotion, Dana Marchand, a White, nonpregnant female, was terminated for using a racist remark. (Doc. # 37, DEX. 4, Cosby depo., at 142-43). Diakin's harassment policy specifically states that employees may submit a "confidential written complaint." However, the Defendant received no such complaints against Ms. Marchand, but instead used interviews, similar to those conducted in September 2001, to investigate the allegations against her.[6] (Doc. #40, at 6-7; Doc. # 37, DEX. 2, Keith depo., at 154-55). Thus, far

---

[6] Defendant states that no *written* complaints were taken from employees about Ms. Marchand because other employees were afraid of her (Doc. # 37, DEX. 2, Keith depo., at 154-55), and similar reasoning supports its decision not to take *written* complaints regarding Plaintiff. (Doc. # 42, PEX. A, Keith depo., at 117). Although there is much evidence suggesting that employees were afraid of Plaintiff, even assuming that this reasoning was insufficient to support Defendant's decision not to take written statements, it does not lead to an inference of discrimination because Plaintiff has failed to present evidence of comparator that would suggest she was subject to disparate

from consituting a breach of common procedure, the method used to receive and investigate complaints against Plaintiff had been used on at least two previous occassions by Defendant: when addressing Plaintiff's complaints against Mr. Oden, a White male; and in investigating the alleged misconduct of Ms. Marchand, a White, nonpregnant female.[7] This evidence supports none of the inferences of race, gender, or pregnancy discrimination that Plaintiff asserts can be drawn from it.

Here, the Defendant's articulated reason for discharging Plaintiff is that she violated work rules. "Where . . . the employer's asserted justification is that the employee violated a work rule, the employee must prove pretext by showing either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in simular acts were not similarly treated." *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1563 (11th Cir. 1987) (citing *Harris v. Plastics Mfg. Co.*, 617 F.2d 438 (5th Cir. 1980)). Plaintiff has not produced sufficient evidence of a comparator whom the Defendant treated more favorably. Accordingly, Plaintiff must attempt to demonstrate pretext

---

application of work rules or policies.

[7] Plaintiff also argues that the manner in which the interviews were conducted was racially biased, (Doc. # 43, at 37-41, 79-80), because (1) the particular employees interviewed were selected because of their bias against her, (2) that Defendant was biased in not interviewing *every* employee in F1-Finishing, and (3) that White and Black Employees offered disparate accounts of her conduct. (*Id.*, at 79-80). The record indicates Defendant interviewed twenty-one employees (including Plaintiff) in September 2001. (Doc. # 42, PEX. E). Of those interviewed, the record indicates at least six were Black and more than half were female. (*Id.*; Doc. # 43, 38-39). While Defendant has a responsibility to use nondiscriminatory procedures in making employment decisions, there is no legally mandated ratio of employees, in terms of sex or gender, who must be interviewed in such a circumstance as this. In an attempt to show racial bias, Plaintiff relies upon selected excerpts from portions of notes related to some of the Black employees. For example, she quotes Employee # 3 as having not noticed any "inappropriate behavior," and Employee # 14 as having no "problems with her [Plaintiff]." (Doc. # 43, at 38-39). However, a complete reading of each of the employee interviews that Plaintiff relies upon to show that the interviews were "targeted" at her demonostrates that the majority of employees interviewed (both Black and White employees) provided information indicating Plaintiff did in fact commit the alleged violations. (Doc. # 42, PEX. E).

by showing that she complied with the work rule and that the employer knew she had complied. *Sparks*, 830 F.2d at 1563.

Plaintiff argues (1) that she did not violate company policy, (2) that Defendant should have known she did not, and (3) that Defendant willfully blinded itself to false allegations against her and failed to conduct an adequate investigation into the facts before terminating her. (Doc. # 43, at 78-83). Plaintiff's argument is that employees who harbored animus against her because of her race, gender, or pregnancy used the complaint system to precipitate her termination. The Eleventh Circuit has established that a plaintiff can prove discriminatory animus as the cause of her discharge if "the decision maker followed the biased recommendation without independently investigating the complaint against the employee." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). In *Stimpson*, the court concluded that, if there was any discriminatory motivation, it was not a part of the employment decision made by a Civil Service Board, even though the plaintiff's superiors recommended her termination. The court did not draw a bright line demarcating the boundary between those procedures that appropriately rely on employee recommendations and those which are "a mere conduit" for discriminatory animus, but it did hold that decision makers who "rubber stamp" discriminatory employment recommendations may be guilty of discrimination. *Id*.

Here, Plaintiff has presented no evidence that the Diakin decision makers, specifically Mr. Keith, Mr. Hendrixson, or Mr. Carter, acted as the "Cat's Paw" for any animus that her co-employees may have felt. Defendant claims, and the undisputed evidence shows, that the September 2001 interviews were conducted in response to complaints made against Plaintiff by other employees. As discussed above, there is no evidence that the interviews themselves were tools of discrimination. Because of the number of employees interviewed, their variety of perspectives, their different races and

genders, and their nearly unanimous reports of poor performance and misconduct against the Plaintiff, the undisputed record evidence shows that (1) the employment decision was not itself discriminatory nor an expression of the animus of the complaining employees, and (2) Defendant possessed a good faith belief that Plaintiff violated the work rules in question. *See Holmes v. West Palm Beach Hous. Auth.*, 309 F.3d 752, 755 (11th Cir. 2002) ("An employer articulates a legitimate nondiscriminatory reason for termination where the employer had an honest, good faith belief in the reason for termination, even if it turns out that the employer was mistaken in that belief."); *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) ("'Pretext is not demonstrated by showing simply that the employer was mistaken.'") (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995)). *See also Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001), *cert. denied*, 534 U.S. 976, 122 S.Ct. 402, 151 L.Ed.2d 305 (2001) (pretext means more than a mistake by the employer; actions taken based on a mistaken, non-discriminatory belief do not violate Title VII); *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000), *cert. denied*, 532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 374 (2001) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by sex."); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000), *reh'g denied*, 218 F.3d 749 (11th Cir. 2000) ("a plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (court's pretext inquiry is properly limited to whether the decision-makers believed the employee had engaged in conduct for which he was terminated and if so whether this belief was the reason for the discharge, not whether plaintiff was actually guilty of the conduct); *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1501 (11th Cir. 1985) (employer's belief, honest but mistaken, may nonetheless provide legitimate reason for dischage).

Despite Plaintiff's conclusory assertions to the contrary, she has offered no evidence which contradicts the record before this court that she was discharged because Defendant believed that a number of diverse employees complained of her misconduct. Nor does Plaintiff provide evidence that Defendant's belief was unreasonable. In the absence of such evidence, and in the absence of any evidence that Defendant was motivated by a prohibited discriminatory animus, the court finds that Defendant is entitled to summary judgment on Plaintiff's claims.[8]

**V.  Motion to Strike**

The court has examined Defendant's Motion to Strike. That motion is denied. Nevertheless, even when the court considers the evidence that is the subject of the motion, that does not create or point to any genuine issue of material fact.

**VI.  Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. (Doc. # 35). The court finds that no genuine issues of material fact remain for trial as to Plaintiff's claims and that Defendant is entitled to judgment as a matter of law. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this __24th__ day of June, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[8] The court has analyzed Plaintiff's remaining arguments in support of her claims and has found them to be without merit. However, it should be noted that Plaintiff has presented no evidence of any employee accused of similar violations of company policy who was not terminated. Furthermore, the record contains substantial evidence that Defendant arrived at the decision to terminate Plaintiff's employment by following the same procedure used to deal with White, male and nonpregnant female employees. Also, Defendant's replacement of Plaintiff as Team Leader with Ms. Letson, a female, does not suggest gender discrimination.